We're going to go ahead with the next case, which is Lacey. Is that the next case? Lacey. Nobody gets it right. Lacey v. Bank of America. Okay. Have your pants. Lacey. Lacey. Lacey. Not Lacey. Lacey. Not Lacey. Not Lacey. No. All right. v. Bank of America. Mr. Bank? Yes. May it please the Court. I'm Todd Bank. I'm here on behalf of Mark Lacey. Just initially, I want to reserve, if I may, five minutes of rebuttal time. I want to start briefly with the procedural issue, the 12G2 issue. This is a paradigmatic example of why Rule 12G exists. Here, the defendant had all the documents that they ultimately used to argue that the plaintiff failed to state a claim. In fact, they had made such a motion in the previous litigation so that they could have redone that very easily, I think. Instead, they made a motion to dismiss based on collateral estoppel, and ultimately that delayed the litigation by roughly two years because it went to this court, and that took a while, and now it went back to the lower court. Then, using the same documents and the same argument that was available to them from day one in this case, they then made another motion. Now, I do understand that, at this point, there might be a practical benefit to saying, well, let's just treat their second motion like a Rule 12C motion, as if they had answered and admitted the allegations, and now they're moving on to Rule 12C. The problem with that is that, as a matter of policy, it would essentially eliminate the rule. I don't think there's any legal argument that they put forth explaining why they didn't violate the rule. They did so clearly. Was it presented to the district court, though? Yes, it was. The judge, you shouldn't decide this because this violates the successive plea rule. Absolutely, the issue was presented. And she said what? The judge. Was I right, Judge? You were right, though, Shane. Judge Wiginton basically described the case, which I don't think was correctly called the Walser, in which it was not clear. I was reading the case just today again. In fact, it was not clear exactly what happened there. It was a little bit confusing, at least to me. But there was language about essentially saying, well, we'll treat it like a Rule 12C plea, which I don't think is. My understanding from the district court opinion is that the issue had been, the issue that had not been addressed in response to the first dismissal motion, unlike here, had at least been raised. So she chose to entertain the new pleading. Correct. But in doing that, essentially, she said there is no Rule 12G. The Rule 12G is very clear. There are exceptions to it, none of which apply here. And, again, this is not even a sympathetic case regarding the defendant because the defendant made the exact same motion, what I call in my papers the second dismissal motion here. They made the motion already, so this wasn't a matter of legal efficiency or saving any significant amount, I don't think, in the way of legal fees. And, again, this is a perfect example. It took a long time to get here the first time, and now this, I could have been standing here perhaps two years ago, and the reason I'm here now, the substance could have been resolved then. So if the court does not apply Rule 12G here, I don't know when it would ever apply. Essentially, it would be saying that it's just not a rule, but it is a rule. Can it be considered harmless error? I'm sorry? Can it be considered harmless error? I mean, she did address it anyway, and she did rule in your favor. I don't think it – I'm sorry, who? The trial judge. It did not rule in my favor, ultimately. What was her decision? I'm the appellant, so she was – Oh, okay. Right. The case was dismissed based on standing. Okay. Which I will – no, again, I just want to reiterate one more time. I agree that it would be harmless error in a practical sense. I disagree that the court has the authority to do what the defendant is asking to do, which is not to make some particular exception of the specific, pardon me, facts of this case, but to simply say or treat it as if it doesn't exist. She should not have heard that motion. I'm sorry? You say she should not have heard that motion. Absolutely, yes, and that was in the district court papers as well, very thoroughly, in fact. All right. Now turning to the substance, the legal merits. Yeah. The district court wrongly held that only a, quote-unquote, called party has standing to sue under the TCPA, as numerous cases have held, some of which specifically criticize the first, Lisey Holden. Again, the one we're here for today was only based on that. So in some effect, we're really appealing the original New York court's decision because the district court in this case really just adopted it wholesale. The statute specifically says a person or entity may sue. It clearly could have said a called party may sue, but it didn't say it. It said a person or entity. And courts have interpreted that as meaning that as long as you have constitutional, as long as a plaintiff, I should say, has constitutional and prudential standing, which Lisey unquestionably does, and I'll turn to that momentarily, that person can be a plaintiff, that person has standing. The district court, and again, adopting the original opinion from New York several years ago. Is it the case then that anybody who picks up that phone, whether it was Mr. Lisey, whether it was him or maybe it was some guest, maybe they're having a party. No, exactly not. No. That's a distinction that's very important. Let me finish. I understand that you say that, now they're roommates, I understand. Yes. Is that correct? And they share the telephone line. But, well, my question is, is it the case that anybody that picks up the phone and hears this robocaller recorded message now has standing to sue because the phrasing in the statute is a person? No, and that's what I was alluding to a moment ago. The way we interpret it being as pretty broad as it could be, a person or entity, would be a person who has constitutional and prudential standing. The house painter, the guest of honor. Anybody. Who has standing. Who has constitutional and prudential standing. The house painter, the neighbor who stops by for a cup of coffee, I'll assume certainly for the sake of this case, would not have standing. But the cases have also held overwhelmingly so that a person who is a regular user of a residential telephone line, which Lisey is, we allege that in the complaint that it was his line,  Another confusion by essentially the two district courts in New Jersey and New York, was that if the defendant has consent to call from the quote-unquote call party or intended recipient, and we don't argue that Lisey was either one of those. We're not arguing that he was the call party or that he was the intended recipient. The district courts had expressed a concern, which was refuted by other opinions in the briefs,  The defendant's position is, and Lisey. You're saying if a person has consent. If a person has permission to call, then it's legal. If the person has permission. If you can make a call on that same, if you have permission to call on that same phone. Yes. Then you have standing to sue if you receive. No, you wouldn't have a claim. You might have standing, but that's a separate issue. You wouldn't have a legal claim. In other words, let's say. Well, who can sue? Well, what is your position as to who can sue? Well, the district court dismissed the case based on standing. What is your position? Oh, I'm sorry. My position is that a person like Lisey, very specifically now, who unlike the guest or the house painter, a person who is a regular user, who uses a telephone line as his regular residential telephone line, his home line. What does it say that in the statute? The statute is even broader. The statute says a person or entity. The case law has interpreted that not as broad as it might be interpreted. Again, the house painter would not have standing. The guest, the party, the guest who is there for a party or some other reason, I assume for the purposes of our case at least, would not have standing. This was Lisey's telephone line. The statute was passed to protect people's privacy in their homes. It might not have been intended to protect the house painter, for example. Because people were getting annoyed at these robocalls. Yes, precisely. They wanted to cut the number of people who had to answer, right? Yes, it was an annoyance. It was a limiting, and it's a potential hazard, as I know, when I have to run to the phone, and it can be dangerous. They call all hours of the day, and people could be sleeping, eating, doing anything. So there's no question that in this situation, someone like Lisey, he wasn't a house guest. I think one of the problems is that the original Lisey decision from New York seemed to imply that he was just a roommate in the sense that he just answered someone else's phone as if they had two separate phones. That wasn't the case. What about the phrase, a cold party? A cold party, I believe that was the district court's rationale for dismissing, for denying. That's correct. For granting the motion to dismiss. That's correct. Because he was not the cold party. Right, and the key concern that both the New Jersey district and the New York district courts expressed was that if a person, and let's use this case as a concrete example. Let's say Bank of America had consent to call Mr. Lisey's roommate. In that case, we're not dealing with a standing issue. Lisey would simply have no merit. We talk about that in the case called Anderson at page 7 of the reply brief. Specifically, it gives that type of example. So this concern about open-ended liability, anyone might answer the phone. If Ms. Dutro, the roommate, had consented to receiving the defendant's call, forget about whether Mr. Lisey would or would not have standing, he would have no claim. Nobody would. So that was just an extreme degree of confusion that other courts, including Anderson, have pointed out. So it's not that Bank of America said we have consent to call this number from, let's say, the roommate Ms. Dutro. That was her name. And oh boy, it's just our bad luck that this guy Lisey answered the phone and now we're in court. He would have no claim. And vice versa, if Lisey gave consent and Ms. Dutro brought a lawsuit, she would have no claim. The two district courts, really one adopting the other, confused the issue of standing and the merits. There's no question if Ms. Dutro had consented that Lisey would not have a meritorious claim whatsoever. And again, the district court treated, the two district courts essentially, treated Lisey like he was a house guest. And there's even a case we've discussed in the briefs that I think Harris is at least part of the name, in which it said, oh, in Lisey, or in Lisey, the original Lisey, Lisey was just sort of a roommate. He really was just answering someone else's phone. Is that accurate? No, it's not accurate at all. Is it accurate that he was a roommate? Oh, that part is accurate. He lived there. Yes, exactly. Not only did he live there, that was the line that he answered was the line that he regularly used. Because it's not a situation as if they each had their own separate phone line, and he ran into his roommate's room and picked up the phone and said, now I've got Lawson on my hands. That wasn't the case at all. This case is pretty old. It is old. It's gone on. It's gone on a while. Ten years, perhaps? Approximately. I think even a little more than that. Does the substance of what's going on here still exist? These robocalls? Oh, being specifically back in America or just in general. That's what motivated the telephone consumer protection act. No, I'm not trying to understand the question, the scope of it. No, the robocalls. I personally get them all the time. Okay. I have many newer cases than this one, so, yes, they still go on. Isn't there an exception for political calls? There is, but in several ways not. Yes, there are several exceptions, political calls, charitable calls are some of them. Not marketing. Not in this case. All right, Mr. Bank, thank you very much. Thank you. We have some time left on rebuttal. Mr. Palmore? Thank you, Your Honor. Joseph Palmore. Do you want to treat that procedural issue, the procedural issue, successively? Yes, I'd be happy to, Your Honor. I think that this Court's decision in Walzer establishes the path for resolving the procedural claim that Mr. Bank addressed. And I took Mr. Bank to concede that any error here was harmless. What the Court in Walzer said was it didn't need to decide whether there had or had not been a technical violation of Rule 12g because any error was harmless and there was no prejudice to the nonmoving party because one could have understood the resolution of the successive 12b-6 motion as a resolution of a 12c motion for judgment on the pleadings in which every allegation in the complaint had been conceded. And so this Court's decision in Walzer, now it was unpublished, but I would point out that the Tenth Circuit in Albers, which we cite in our brief, adopted this Court's approach in Walzer expressly. The rule says you must not make another motion. Once you do a 12b-6 motion to dismiss a complaint, the rule says you must not make another motion under the rule raising a defense or objection. That was available to the party. Right, but there are other rules, too, that come into play. So, for instance, Rule 12h-1 says that a party waives any defense listed in 12b-2 through 5 if the party doesn't raise it in a motion to dismiss. It doesn't address 12b-6. It's not waived. And then Rule 12h-2 says that failure to state a claim upon which relief may be granted can be raised later in the case, even if it wasn't raised in an initial 12b-6 motion. So what the Court said in Walzer is what the District Court did here was essentially treat this as a motion for judgment on the pleadings. And, again, I've heard Mr. Bank to concede that any error was harmless. So we think under the Court's decision in Walzer, it's quite plainly the issue is before the Court, the merits issue is before the Court. Maybe you get it unless somebody has a question about the... What is the Bank of America, what is the Bank of America, a respected institution like that, doing, making robocalls? I was amazed when I realized who it was. Well, Judge Sloboda, I think it's critical to point out that this was not a robocall of the kind that we think of under the TCPA. This was an attempt to do live telemarketing, which is not regulated under the TCPA except for the do-not-call parts of the statute, which aren't at issue here. This was what was called an abandoned telemarketing call. The intent was to put a real live sales agent in touch with Ms. Dutroux, but the SEC's rules provide that if the mechanism doesn't make that connection to a live person within two seconds of the call being picked up, that the caller is required to play a recording called a prerecorded identification message, which simply says, and it said in this case, this is Bank of America making a telemarketing call, and it gave a callback number. That's it. The Court, the FCC has said that that is not a robocall, and in the colloquial, that is not an unsolicited advertisement. It is expressly provided for by the FCC's regulations, and in paragraph 10 of the complaint, plaintiff concedes that that call was legal and appropriate. His theory is that when one returns that call, so just to emphasize again, the call said, you've received a telemarketing call from Bank of America. Here's the callback number. What does Bank of America sell? It's credit? Credit cards, Your Honor. Credit cards. Credit cards. And he's apparently, one of my law clerks looked him up. He's filed a number of cases under different statutes, right? He's a litigator. My understanding is that Mr. Vesey has a number of TCPA claims against a number of defendants, and in this case, of course, we at Bank of America have been litigating this case, about one phone call for more than ten years now. It's been in three different district courts. It's been in two different courts of appeals. The first case was brought by Ms. Dutroux, and I think that's critical here, because if I could shift to the merits, Mr. Vesey lacks standing because he is not a called party within the meaning of the TCPA. Could you respond on that same point that you're raising now, but respond to Mr. Bank's comment that the plain text of the statute says that any person or entity can sue, any person can sue. The called party phrase appears as an affirmative defense. That's right, Your Honor, but it all has to be read together, and it's a canon. But for suing purposes, to file a complaint, if the text of the statute says any person can sue, why don't you let him sue the complaint, then you raise an affirmative defense. Because, Your Honor, it doesn't say anyone can sue. I'm sorry to cut you off, but you're raising that on the issue of standing. Correct, statutory standing. You're saying he has no standing because he's not a called party, but the way I'm looking at it, the idea of a called party appears as an affirmative defense, that you're pleading your defense. Right, but the private right of action provision that you're referring to, Your Honor, in 227b-3, provides that a person or entity may sue based on a violation of this subsection. You have to look at the subsection for the substance of what the violation is, and all of this needs to be read together. As the Supreme Court recently reemphasized in King v. Burwell, you can't pull out one little phrase from a statute. You have to read it as a cohesive whole. So when you look at what's the actual substantive provision that's at issue here, which is v. 1b, it makes it unlawful to initiate a telephone call to any residential telephone line using an artificial or prerecorded voice without the prior express consent of the called party. It's a consent-based statute. It doesn't flatly prohibit these kinds of calls. So your view is that we have to look at the substantive provisions of the statute to determine whether they are standing to file a suit in the first instance? Yes, Your Honor, because it's a consent-based statute. And if the question is, was this provision violated? Was someone called without their express consent? Then the person who can sue is the person who was called and whose consent would be at issue. In this case, that's Ms. Dutroux. And I think it's critical for the Court to understand that the very first case in this long saga in 2005 was filed by Ms. Dutroux about this very same phone call. And there was jurisdictional discovery in that case before Judge Codal in the Southern District of New York. And the facts were adduced, and they're not contested here, that the call was made to Ms. Dutroux, that the number was associated with her in Dial America was the vendor in its database, and that they were intending to speak to Ms. Dutroux. And then Ms. Dutroux sued about the very same phone call. In her first complaint, she said it went to the answering machine. Then she amended the complaint, and it was unclear what she was saying about whether anyone answered it. The issue is standing in this case. You're going into the background and the merits of the case. No, but I think it's important to understand that the way that this case has evolved over this decade is that there are certain factual findings that have been carried with it, and they've been conceded. So the fact that the call was made to Ms. Dutroux is critical. She was the intended recipient of the call. Would she have had a claim for $500? She did assert that claim. We would contest it on the merits, but she has standing to assert that claim. That case is still pending. Would a spouse be the cold party? I think in any case, the issue would be who was the caller trying to reach. Who was the intended recipient of the call? Do you have to look at the call? Was she identified when the call was made, and her name was used in the call? Her name was not used in the call, and this goes back to what this call was, which was a prerecorded identification message, and there's no requirement on that. So how do we know who the cold party is? Because there was jurisdictional discovery before Judge Kodal, and it came out from the record to Dial America that she was the cold party. It was her residential phone line. They were trying to reach her, and Mr. Lisi has never contested any of that. He says it doesn't matter. His broadest submission originally was the cold party is whoever answered the phone. This is a remedial statute so that it's intended to put a stop to the abuses of robo-calling, and if we consider this as a remedial statute, why shouldn't we interpret the standing issue broadly to include someone like Mr. Lisi, who isn't just a person who happened to be in the apartment. He actually lived in the apartment. Wouldn't it be restrictively? Not remedial, no. Well, it's a remedial statute. It stands to remedy a problem. Those are interpreted broadly. What about the number of people who could sue? Well, I don't know. Well, I think two points in response to that, Judge Point. I think that remedial canon doesn't trump the other canons of statutory construction, including the canon that a statute must be read as a cohesive whole, and as I suggested before, the private right of action provision must be read in tandem with the substantive violation, which makes consent or its absence the lynchpin of the statute. So the question we would submit in every case is, whose consent matters for establishing a substantive violation, and that's who should sue. And I would also suggest that there's no reason to bend over backwards here using the remedial canon or any other canon to find standing for Mr. Lisi because Ms. Dutroux has sued about the same call. I don't understand how they can both collect $500 for the same call. That case is over, isn't it? No, it's still pending. It was administratively closed. It's not been dismissed. Why is it administratively? Well, again, this goes into the long and tangled procedural history. There was a separate issue. But what you're suggesting is that because she has a case that filed a case, then Mr. Lisi cannot possibly have a case. I'm suggesting that her conduct in filing that case recognizes, she recognizes in filing that complaint that she was the proper plaintiff, and we agree. She was the one that was being called. She alleged in her complaint that she didn't consent, that it was her consent that was at issue. If anyone has a claim here, it's she. Now, we think there are separate problems, and as I mentioned before, we don't think that this call, this prerecorded identification message, even falls within the prohibitions of the TCPA, and that was fully briefed in the district court, and if we end up going back yet again, we will make that argument. But we think for purposes of today that this court can rule quite narrowly under the facts of this case, that there's no reason to make a sweeping pronouncement about standing under the TCPA because of the way this case has been litigated over the years. It comes, as I mentioned before, what comes with this case are a certain set of factual findings, which Judge Kodal made and relied upon, and the district court here relied upon, and they're not contested. You say that we shouldn't make any sweeping statements with regard to standing. I tend to agree with you, but we do have to address standing. Oh, absolutely. That's the issue before the court, and we think the district court got it right and should be affirmed. And that would be because Mr. Lisi was not the called party. Right. He was not the called party. He was the unintended. This is on A13 of the district court's opinion where she wrote. Well, you answered Judge Wente's question, how do we know who was the called party? Because Judge Kodal. I don't know that he ever answered that. Yes, Judge Kodal found as a matter of fact there was jurisdictional discovery way back in one of the earlier iterations of this case. Remember, this precise claim by Mr. Lisi was filed in the Western District of North Carolina. It was transferred to the Southern District of New York, and it was dismissed there for lack of standing. Then he refiled it after some appellate proceedings. He refiled it in the District of New Jersey, the exact same complaint. So we have other reasons for dismissal. Under the first file rule, we've moved to transfer. Yeah, but that's what happened here. But what about the general? You said don't make a sweeping decision. What's the general view? Now, what's your general position? Our general position is that the person withstanding is the called party, meaning the intended recipient of the call. And in most cases, how does one know who is the person who is the called party? In some cases, it may be necessary to have discovery on that issue. But what I'm suggesting, Judge Slobider, is that in this case. Well, if I had the dollar claim, it seems like. Mr. Lacy filed this pro se, and he wants to make it into a class action. How do you get discovery before you address the issue of standing? From the Dutro? There was standing in the earlier Lacy case, and I'm sorry, in the Dutro case as well. The discovery as to who the called party was. Yeah, so there's no mystery here. It is uncontested that Ms. Dutro was the called party in this case. That is uncontested. And you try to knock her out because she already sued once and she can't sue twice? She hasn't. She has yet to sue twice. She's only sued once. It's still sitting. It's administratively closed but not dismissed in Judge Kodal's courtroom. And she's made no effort to revive that. She's represented by Mr. Bank also. She's made no effort to revive that case.  I would agree with you there, but I'm still looking at the statute that says any person or entity can sue. Judge Fuentes, I think it's important to recognize that that right of action provision applies broadly. That doesn't mean they're going to win, obviously. Right. But they can at least present the claim and have the case go forward. That provision applies broadly to the TCPA, not only to the phone call part to the TCPA, but to the junk facts part to the TCPA. So that would explain why it doesn't say the called party or the call recipient because that wouldn't, if they used that phrase, it wouldn't address the fax recipient. We get junk facts in our fax machine. Can the federal government sue? I don't know the answer to that question, Judge Sloder. But that person or entity phrase is broad enough to encompass all those different bases for liability. I think you have to look back. The called party is in there seven times, I think. It's in there repeatedly. And I understood Mr. Bank to, in a sense, fall back from the broad, any person who picks up the phone the house painter could call and said the regular user of the phone. That phrase doesn't appear anywhere in the statute, that regular user phrase. That's not there at all. Our position has the virtue of being tethered to the language and structure of the statute. And I would point out finally that if you look at the complaint here, Mr. Lisi doesn't even allege that he answered the phone. There's no allegation in the complaint that he answered the phone, that he picked up the call. And Ms. Dutroux, when she initially sued, said it went to the answering machine. So it's unclear to me that other than the fact that he moved to the house. Are those not issues for discovery if you get past the standing issue? Well, if we get past the standing issue, as I said,  we would try to get it transferred. If down the road we are still litigating this, then, yes, there might be discovery on that. But he doesn't even allege in the complaint that he answered the phone call. Mr. Palma, thank you very much. Thank you. Mr. Bank? First of all, the fact that Ms. Dutroux brought a lawsuit has nothing to do with the legal merits of the audience regarding standing. It's interesting. Yes, that's all it is. Whether she brought the suit or didn't bring the suit, the question of whether Mr. Lisi has standing will not be affected by that one way or the other. But it is conceded that she was the person that was intended to be called. Yes, absolutely. The statute uses, as my colleague I think just noted, uses the term called party seven times. And all of a sudden it uses a totally different terminology when saying who could sue under the private right of action provision. And now we're supposed to assume that it means the same thing as called party when it obviously doesn't. Lisi never argued, by the way, that any person, as in the most literal construction of that, any person in the world could bring a lawsuit because someone called a particular telephone number. We've never argued that. And again, the courts, as we do argue, they have not construed the term person or entity to mean anybody in the world. But as I said in the opening, a person like Lisi who has constitutional and prudential standing. So there are limits. Did Lisi answer the phone? I believe it was received. I don't recall. I believe it was received by the machine. I don't think legally that would matter to either standing or the merits for that matter. The point is it was in his phone line that the calls were received. So he has standing. Whether Ms. Dutro also sued or did not, again, not relevant. It was a shared phone line? Yes, that's correct. So that means that any house will like if you've got a mother and father and ten kids sharing the phone, that they each have standing if there's a mobile call to that house? I'm sorry. If they are regular users of the phone line, then the answer would be yes. Of course that doesn't mean like in, for example, a property damage case, that the fact that there are multiple plaintiffs means they each recover 100% of the damages, so that that way their five plaintiffs, the defendant rather, can have a judgment against you for 500%. Well, the damages are set forth in the statute. I'm sorry. The damages are set forth. They can't make off damages. It's per claim. That's right, per violation. So if there's still only one violation, the fact that two people live there doesn't mean that there were two separate violations. The violation was the one call. So if, for example, Ms. Deutscher and Lacy had sued as co-plaintiffs, it doesn't mean they would each be entitled to $500. It's not $500 per plaintiff. It's per call. What is the objection of law or offending conduct? Is it the call coming in, period, or does somebody have to listen to the message? No, just the receipt of the call. As long as the call is received. I don't think this issue was mitigated. The call coming in. Yes. Yes, the call was received. And just briefly on the merits, I just want to clarify the record. My understanding is that the defendant's telemarketing company uses what in the industry are called predictive dialers. And just by way of example, they'll know that at a given time, statistically speaking, on average, that if they make 400 phone calls, 100 people will answer their telephones. So they have 100 sales representatives. Well, sometimes the statistics won't bear out to be true. 105 people might answer the phone. So now you have 105 people answering their phones, but only 100 sales representatives of the telemarketing company speak to them. Meaning five people are essentially stranded or abandoned, as the terminology goes. And it is true what my colleague said, that Bank of America left a prerecorded message as required. The claim is not based on that prerecorded message standing by itself. Essentially, though, the defendant used that prerecorded message as a ruse to obey the statute. The regulation says that when a person calls the number, I'm sorry, with a prerecorded identification message, the telemarketer, or I should say the caller, wherever it might be, must leave a phone number for the specific purpose of enabling the recipient of the call, whoever it might be, to make a do not call request. Well, what happened here is before a person is able to call back the number, before a person was able to make the do not call request, which is the only reason for that regulation, that person heard through no choice of their own, regardless of what, if any, key they pressed, heard the prerecorded messages. And the FCC said that a message that is intended to promote a sale in yet a later message or later communication is what they call a dual-purpose call, which still violates the statute. It was just a ruse to get around the statute. And it wasn't even like the first option was if you want us to leave you alone, press 1. It was if you want more information about the Bank of America credit card that they were trying to sell, press 1. It was only, very conveniently, it was only the last option. It didn't even say it explicitly. It said if you want more information about the call that you received, the initial call, press 4. And then they tried to sell you the credit card. And then finally, if you want to make a do not call request, presumably you would be able to do that. So it was a ruse just to get around the statute. We're sort of done. Do you want to wrap up? Actually, thank you. I do. Very briefly. Regarding the notion that a remedial statute should be interpreted broadly. Broadly or restricted? Broadly in favor of the plaintiff. A remedial statute to further the remedy. Generally speaking. Generally speaking, yes. But my point here, we don't even have to deal with that principle of statutory interpretation because the plain language in the case law interpreting it is perfectly clear that Lisi has standing to sue. What's so perfectly clear? Because this is any plaintiff? I'm sorry? Why is it? Because he's a person or entity. How does an entity sue in a case like this? What if they called a business? I see. So a business can have standing. A business, generally speaking, could have standing as long as, like a person, which is what we deal with here, as long as an entity had both constitutional and prudential standing. Again, not any person, 99.999% of the world, would not have standing in this case, only the people who live in the household or, more specifically, who use the receiving telephone line as their residential telephone line. Very good. And that's exactly what the case was here. Mr. Bank, thank you very much. Thank you. And you, Mr. Palmore, thank you very much. Both of you, very good arguments. We'll take the case under advisement and we'll adjourn until Thursday. Is that what you were saying again? Somebody is going to take care of this.